**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | ) | |
| CYNTHIA P. LEROY, | ) | |
| | ) | No. 3:13-cv-922 CSH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | **FEBRUARY 6, 2015** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**RULING ON RECOMMENDED RULING OF MAGISTRATE JUDGE**

**HAIGHT**, Senior District Judge:

In this action under § 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), as

amended, Plaintiff Cynthia P. Leroy seeks review of a final decision of the Defendant Commissioner

of Social Security denying Plaintiff Disability Insurance Benefits ("DIB").

Plaintiff Leroy applied to the Social Security Agency ("SSA") for DIB, on the basis that

during the relevant period of time she was disabled as the result of a combination of medical

conditions.  Her case was heard by Administrative Law Judge Jane A. Crawford ("ALJ"), who after

an evidentiary hearing issued a decision that Leroy was not disabled through September 30, 2010,

the date she was last insured.  Accordingly, Leroy's application for DIB was denied in its entirety.

The SSA Appeals Council denied Leroy's request for a review , thereby rendering the ALJ's decision

the final decision of the Commissioner.  This action followed.

Leroy filed a motion for an order reversing the decision of the Commissioner, or in the

alternative a remand for a rehearing before the ALJ.  The Commissioner cross-moved for an order

affirming her decision denying Leroy's application.  The Court referred the case to Magistrate Judge

Joan G. Margolis for report and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).

In a Recommended Ruling ("RR") [Doc. 24], Judge Margolies recommended that Leroy's

motion be denied and the Commissioner's cross-motion be granted.  Leroy has filed objections to

the RR.  This opinion considers them.

**I**

A threshold question, unaccountably disregarded by the Commissioner, arises because

Leroy's objections to the RR were not timely filed under the statutory scheme.  The Court raises the

timeliness of the objections *sua sponte* because it impacts the standard of review.

28 U.S.C. § 636(b)(1) provides in pertinent part:

> Within fourteen days after being served with a copy, any party may
> serve and file written objections to such proposed findings and
> recommendations as provided by rules of court.  A judge of the court
> shall make a de novo determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made.  A judge of the court may accept, reject, or modify, in whole
> or in part, the findings or recommendations made by the magistrate
> judge.

In the case at bar, Judge Margolis dated and filed her Recommended Ruling [Doc. 24] on

September 2, 2014.  At the inception of the case, Judge Margolis entered an order [Doc. 4] which

provided: "This case is designated as an electronically filed case," and specified: "All activity in the

case (e.g., documents, orders, notices and calendars) will be filed/sent electronically from this date

forward."  It follows that September 2, 2014, the date the RR was filed, is also the date Plaintiff was

"served with a copy," as that phrase is used in § 636(b)(1).  "Written objections" to the RR, which

"specified proposed findings or recommendations to which objection is made," had to be filed "within fourteen days" after September 2.  Excluding September 2 from the calculation, objections in the proper form were due not later than September 16.

Plaintiff did not file objections to the RR within that statutory period.  Instead, on September 19, 2014, she filed [Doc. 25] a self-styled "Objection to Magistrate Judge's Recommended Ruling." That submission did not specify any findings or recommendations in the RR to which Plaintiff objected; instead, Doc. 25 concluded by saying: "Plaintiff will set forth the factual and legal bases for her Objection in a separate Memorandum, but in a Motion filed herewith, plaintiff asks for an Extension of Time of four weeks, until October 18, 2014, to file said Memorandum."  The next docket entry recites that on October 14, 2014, Plaintiff filed a single-sentence "Objection" [Doc. 27] to the RR, together with a five-page Memorandum [Doc. 27-1] which for the first time specified the findings and recommendations in the RR to which objection was made.[1]

This recitation compels the conclusion that Plaintiff did not file objections to the RR complying with the requirements of § 636(b)(1) until October 14, 2014, six weeks after the RR was electronically served on counsel (September 2) and four weeks after objections in proper form were due (September 16).  The consequence of that untimely submission is to deprive Plaintiff of the right to have this Court make a *de novo* determination of the Magistrate Judge's findings or recommendation to which Plaintiff objects.  A district judge's *de novo* responsibility is triggered by a party's objection that is both proper in form *and* within the time required by the statute.  Any other

---

[1] Equally unaccountably, the Commissioner has not filed any opposition to Plaintiff Leroy's objections, although practice under § 636(b)(1) allows the Commissioner to do so and that officer routinely avails herself of the opportunity.  In this case, I do not infer from the Commissioner's silence that she agrees with Leroy's objections, and experienced counsel for Plaintiff do not suggest that I should.

conclusion would write the explicit fourteen-day provision out of the statute.  Nor is a valid objection

created by Plaintiff's motion for an extension of time to file an objection to the RR [Doc. #26].  That

motion, filed on September 19, three days after the objection to the RR was due, is itself untimely

and must therefore be denied.

 A party's failure to make objections to a magistrate judge's recommendations is not

jurisdictional in nature.  That is to say, the failure does not preclude any review by the district court.

But it does narrow the scope of that review.  "The district court adopts a Magistrate Judge's report

and recommendation where no clear error appears on the face of the record.  However, the court is

required to make a *de novo* determination of those portions of a report to which objection is made."

*Lee v. Lending Tree*, 473 F.Supp.2d 435, 436 (S.D.N.Y. 2007) (citations omitted).  "A district court

evaluating a Magistrate's report may adopt those portions of the report to which no specific, written

objection is made, as long as those sections are not clearly erroneous."  *Bandham v. Laboratory*

*Corp. Of America*, 234 F.Supp.2d 313, 316 (S.D.N.Y. 2002 (citations and internal quotation marks

omitted).  If no timely objection is filed, "the district court can adopt the report without making a *de*

*novo* determination."  *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

 In the cited cases, no objections to a Magistrate Judge's report and recommendation were

filed.  In the case at bar, objections were filed, but beyond the time limit provided by the statute.  I

think it clear that the consequences should be the same in both situations.  The statute provides that

a district court must make "a de novo determination" with respect to "specific proposed findings or

recommendations to which objection is made" in written objections served and filed "within fourteen

days after being served with a copy" of the report.  A *de novo* determination is the  most broad, least

deferential standard of review known to the law.  In § 636(b)(1), Congress conditioned a party's

entitlement to *de novo* review of a magistrate judge's report upon the timing of objections (fourteen days after service) and their form (written and specific).

Congress presumably had its reasons for imposing these limitations. I do not see my way clear to disregarding them. The question arises because in this case, Plaintiff did not file written specific objections to Judge Margolis's report and recommendations until six weeks after counsel was electronically served with a copy. It follows that this Court will not subject any of Leroy's objections to a *de novo* evaluation. The standard of review will be limited to inquiring whether any aspect of the RR is clearly erroneous, or stated otherwise, whether a clear error appears on the face of the record.

## II

That inquiry leads the Court to consider what has come to known in cases of this nature as the "treating physician rule," a formulation first created by Second Circuit decisions, and thereafter changed and clarified by SSA regulations, 20 C.F.R. § 404.1527(d) (1991), whose validity the Second Circuit has accepted. For a discussion of this history, *see Schaal v. Apfel*, 134 F.3d 496, 503-504 (2d Cir. 1998).

The concept is born of common sense. An individual applying for disability benefits under the SSA claims to be disabled by medical conditions: physical, mental, or a combination. Invariably, prior to applying for benefits, the individual's conditions have been treated by a physician or physicians: hence the descriptive phrase "treating physician." On the core question of whether the individual is *disabled* by the *conditions*, a treating physician is uniquely qualified to express an informed professional view. An SSA ALJ is generally required by the regulations and Second Circuit case law to give the opinion of a treating physician more weight than other reports or

opinions in the administrative record.  *See Burgess v. Astrue*, 537 F.3d 117, 128-29 (2d Cir. 2008).

Circumstances may arise, the Second Circuit has held repeatedly, when an ALJ has the "duty to seek additional information from [a treating physician] *sua sponte*."  *Schaal*, 134 F.3d at 505. "The ALJ's duty to develop the record reflects the essentially non-adversarial nature of the benefits proceeding.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  *Swintek v. Commissioner*, ___ Fed.Appx ___, 2015 WL 106346 (2d Cir. Jan. 8, 2015), at *2 (citations and internal quotation marks omitted).  Whether an ALJ breached that duty in a particular case depends upon the totality of its facts and circumstances.

In the case at bar, Leroy's principal treating physician was  S. Javed Shahid, M.D., a board-certified neurological surgeon whose practice is in Norwalk and Danbury, Connecticut.  Dr. Shahid performed two spinal neck surgeries on Leroy: the first on June 23, 2004, and the second on February 8, 2006.  Leroy's application to the SSA for disability benefits cites February 8, 2006 as the beginning date of her disability.  On that date, according to the ALJ's decision at pages 3 and 4, Leroy underwent at Dr. Shahid's hands:

> a left C6-C7 hemilaminectomy and foraminotomy and a mass fusion of the C4 through C7 vertebrae on February 8, 2006.  She had recently incurred a neck injury on a trip to Maine wherein she was thrown violently on the shore by an ocean wave.  The medical evidence of record substantiates that this impairment more than limits the claimant's ability to perform basic work activities.  Accordingly, the undersigned finds that such impairment is severe.

Doc. [8-3] at 12-13 (citations to record omitted).

Following her surgery on February 8, 2006, Leroy continued to have problems involving pain and various degrees of physical limitation.  She paid a number of follow-up visits to Dr. Shahid. Those consultations generated a substantial amount of medical notes and reports, most of which

comprise the 43-page Exhibit 2F at the administrative hearing (Doc. 8-8 in this Court on these

motions).  Dr. Shahid's last report in evidence, dated February 17, 2011 (Administrative Exhibit 8F,

Doc. 8-9 in this Court), recounts his findings and impressions during a follow-up visit Leroy paid

to him on February 15, 2011.  After describing certain clinical findings and subjective complaints,

Dr. Shahid concludes his report by saying:

> She clearly has lost cervical range of motion and her most of the
> motion is occurring at the upper cervical spine so I feel at this point
> in time she has lost greater than 40-45% of her cervical motion in
> extension, flexion, and lateral rotation.  Neurologically, she is intact
> but she has issues now that going on with her severe tendonitis in the
> right elbow which gets aggravated if she does any kind of physical
> activity that involves using more weights or repetitive motion.  If she
> raises her arm for any length of time, the neck bothers her a lot.
>
> DISCUSSION:  She has continued to live with her disability.  *She
> remains disabled*.  I will see her on a p.r.n. basis.

Doc. [8-9] at 2 (emphasis added).[2]

The case at bar presents the question whether the ALJ gave appropriate consideration to the

opinion of a treating physician that this disability benefits applicant was "disabled."  ALJ Crawford

discusses Dr. Shahid at pages 10 and 11 of her decision.  She begins by saying:

> The assessment of S. Javed Shahid, M.D. (Ex. 2F), is given great
> weight due to his treatment relationship with the claimant and due to
> the level of support for the assessment in the evidence of record.

Doc. [8-3] at 19.  The ALJ's recognition of Dr. Shahid as Leroy's "treating physician" is an

---

[2]   The medical notation "p.r.n.," translated into English, means "as needed."  Dr. Shahid's
report, which I have quoted in text just as it appears in the original, contains several grammatical
lapses, and if he were submitting it as part of a Graduate School course in Composition I would
scatter some disapproving "sic"s about.  But it seems likely that Dr. Shahid was dictating the report
from his notes, as busy physicians are wont to do, and his clinical and professional opinions are
clear.

acknowledgment of the obvious.  The ALJ gives "great weight" to Dr. Shahid's "treatment

relationship" with Leroy, an odd way of putting it because "weight" in this context usually relates

to opinions, not the relationships that generate opinions.  In any event, the ALJ went on to discount

entirely Dr. Shahid's opinion that as the result of Leroy's medical and physical conditions, she

"remains disabled."  On that core issue, the ALJ said:

> The statement of Dr. Shahid that the claimant "remains disabled" (Ex.
> 8F) is given little weight because the terms "disabled" and "disability"
> are legal terms of art, meaning that the disability analysis is not solely
> a question of medical fact.  There is no indication in the record that
> the opinion given is based upon the proper application of the legal
> test of disability using appropriate and accurate vocational data.

Doc. [8-3] at 20.

In Leroy's motion to reverse the Commissioner's denial of benefits, counsel argued that the

ALJ failed to give requisite deference to the opinion of Dr. Shahid, a treating physician, that Leroy

"remains disabled."  Judge Margolis's RR [Doc. 24] rejected that argument.  The RR quotes the

ALJ's decision giving "little weight" to Dr. Shahid's statement that Leroy "remains disabled" because,

the ALJ stated, "the terms 'disabled' and disability' are legal terms of art, meaning that the disability

analysis is not solely a question of medical fact."  The RR accepts that proposition, and expands

upon it:

> The ALJ was correct in her assessment as it is well settled that "some
> kinds of findings – including the ultimate finding of whether a
> claimant is disabled and cannot work – are reserved to the
> Commissioner. . . . [T]he Social Security Administration considers
> the data that physicians provide but draws its own conclusions as to
> whether those data indicate disability." *Snell v. Apfel*, 177 F.3d 128,
> 133 (2d Cir. 1999) (internal citations & quotations omitted); 20
> C.F.R. § 404.1527(d) (opinions that a claimant is disabled or unable
> to work are opinions on issues reserved to the Commissioner because
> they are administrative findings that are dispositive of a case).

Doc. [24] at 23.

It seems to me, with respect, that while this analysis is correct as far as it goes, it does not go far enough. Judge Calabresi's opinion for a unanimous Second Circuit panel in *Snell,* cited by the Magistrate Judge, cuts two ways, as the following passage demonstrates:

> The final question of disability is, as noted earlier, expressly reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1).
>
> Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation, under *Schaal* and § 404.1527(d)(2), to explain why a treating physician's opinions are not being credited. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even – and perhaps especially – when those dispositions are unfavorable. A claimant like Snell, who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. Snell is not entitled to have Dr. Cooley's [her treating physician's] opinion on the ultimate question of disability be treated as controlling, but she is entitled to be told why the Commissioner has decided – as under appropriate circumstances is his right – to disagree with Dr. Cooley.

177 F.3d at 133-134 (one citation omitted).

The Second Circuit's decision in *Snell* furnishes valuable guidance in the case at bar. The ALJ in the present case chastised Dr. Shahid with a lecture that "the terms 'disabled' and 'disability' are legal terms of art, meaning that the disability analysis is not *solely* a question of medical fact" (emphasis added). True enough: But in an SSA analysis, "disability" is *partially* "a question of medical fact." The ALJ's single-minded concentration upon "disability" as a "legal terrm of art" caused her to lose sight of the fact that it is also a medical term. To state the case in Pentecostal terms: In the world of Social Security Act disability analysis, a physician speaks only in the medical

tongue.  An ALJ (and the attorneys appearing before those officers) must speak in the medical and vocational tongues. A reviewing court considers whether the agency has given appropriate consideration to the use of the terms "disabled" and "disability" in *each* of these two frames of reference.

*Snell* is instructive because Dr. Cooley, the claimant's treating physician, reached the "ultimate conclusion that Snell was totally disabled." The ALJ and SSA Appeals Council disagreed. The district court adopted the agency's denial of benefits.  The Second Circuit vacated the district court's and remanded the case to the Appeals Council "for a statement of the reasons on the basis of which Dr. Cooley's finding of disability was rejected." 177 F.3d at 133, 134.  Dr. Cooley spoke, one should remember, in the tongue of medicine: for him, "disabled" was "a question of medical fact," and he used that term without apology.  So did Dr. Shahid.

In *Snell,* the Second Circuit cited and followed its earlier decision in *Schaal v. Apfel*, 134 F.3d  496 (2d Cir. 1998).  The court of appeals' opinion in *Schaal* is equally instructive in the case at bar.  In *Schaal,* the claimant's treating physician, a Dr. Jobson, expressed the opinion that claimant was "'totally disabled and has been disabled, for the past 3 years, since 1990.'" 134 F.3d at 500. The ALJ ruled after a hearing that "plaintiff was not eligible for benefits because she was not 'disabled' for purposes of the Act," *id*. at 498, a ruling which became the final decision of the Commissioner. Claimant sued in the district court.  A magistrate judge recommended dismissal of the action.  The district court adopted that recommendation.  On appeal, the Second Circuit reversed the dismissal of claimant's suit and remanded the case to the SSA for further proceedings, for reasons stated in part at 134 F.3d 505:

> In sum, because we are unsure exactly what legal standard the ALJ

> applied in weighing Dr. Jobson's opinion, because application of the
> correct standard does not lead inexorably to a single conclusion, and
> because the Commissioner failed to provide plaintiff with "good
> reasons" for the lack of weight attributed to her treating physician's
> opinion as required by SSA regulations, we conclude that the proper
> course is to direct that this case be remanded to the SSA to allow the
> ALJ to reweigh the evidence pursuant to the 1991 Regulations,
> developing the record as may be needed.

The "1991 Regulations," to which the Second Circuit referred in *Schaal*, include 20 C.F.R.

§ 404.1527(d)(2), which provides in part: "We will always give good reasons in our notice of

determination or decision for the weight we give your treating source's opinion."

During the course of its opinion in *Schaal*, the Second Circuit included a discussion of

relevant principles which I quote at some length because of the bearing of those principles upon the

case at bar:

> Nor does it appear that the Commissioner provided "good reasons"
> for discrediting Dr. Jobson's opinion, as the 1991 Regulations require.
> The lack of clinical findings complained of by the ALJ did not justify
> the failure to assign at least some weight to Dr. Jobson's opinion, for
> two reasons. First, even if the clinical findings were inadequate, it
> was the ALJ's duty to seek additional information from Dr. Jobson
> *sua sponte*. The ALJ generally has an affirmative obligation to
> develop the administrative record. This duty exists even when the
> claimant is represented by counsel. Second, notwithstanding the
> ALJ's failure to solicit further information from Dr. Jobson, plaintiff
> *did* provide such additional medical evidence, in the form of Dr.
> Jobson's treatment notes, to the Appeals Council. Similarly, Dr.
> Jobson's treatment notes appear to address the ALJ's doubts as to the
> duration of plaintiff's treating relationship with Dr. Jobson. The notes
> appear to indicate that Dr. Jobson examined plaintiff at least seven
> times over ten months, beginning in October 1992, and that plaintiff
> was treated at the Mid-Hudson clinic, where Dr. Jobson worked, a
> total of 15 times over that same period. Therefore, by the time the
> Commissioner's decision became final upon denial of review by the
> Appeals Council, the only two reasons indicating by the ALJ for
> discounting Dr. Jobson's opinion were no longer valid. We hold that
> the Commissioner's failure to provide "good reasons" for apparently

affording no weight to the opinion of plaintiff's treating physician constituted legal error.

134 F.3d at 505 (citations, internal quotation marks, and footnotes omitted).

This discussion by the Second Circuit resonates in the case at bar in several ways. In *Schaal* the ALJ discounted the treating physician's opinion that the claimant was disabled because of a "lack of clinical findings." Judge Cabranes, writing for the court of appeals, briskly disposed of that reasoning: "even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from Dr. Jobson *sua sponte*." That holding applies to this case *a fortiori*. In *Schaal*, the ALJ complained of a lack of *medical* data (clinical findings) supporting the treating physician's opinion on disability. In the present case, the ALJ complained of the dearth of "appropriate and accurate *vocational* data" supporting Dr. Shahid's opinion of February 17, 2011 that Leroy "remained disabled." If, as the Second Circuit held in *Schaal*, a lack of *medical* data is an insufficient basis for an ALJ to disregard a treating physician's opinion, that is at least equally true of a lack of *vocational* data. That proposition follows *a fortiori* because a physician is expected to speak in medical, not vocational language.[3] An ALJ's duty to "seek additional information" arises in either situation.

An ALJ bears the duty of further inquiry, the Second Circuit held recently, because "the essentially non-adversarial nature" of an SSA benefits proceeding casts upon an ALJ the "duty to investigate the facts and develop the arguments both for and against granting benefits." *Swintek*, 2015 WL 106346 at *2 (2d Cir. Jan. 8, 2015) (internal quotation marks omitted). In the case at bar, the ALJ had to consider a February 2011 opinion by Dr. Shahid, a treating physician and surgeon

---

[3]   Case law reveals that on occasion, a treating physician is asked to fill out an SSA questionnaire which is cast in vocational as well as medical terms. There is no evidence in the present case that Dr. Shahid filled out such a form with respect to Ms. Leroy.

who operated on Leroy in February 8, 2006 and conducted a number of follow-up visits in the interval, dealing at times with various symptoms and complaints recounted by Leroy.[4]  Dr. Shahid says in his February 17, 2011 treatment note: "She remains disabled."  Dr. Shahid's medical records concerning Leroy in evidence do not appear to include a prior use of the adjective "disabled" to describe Leroy, so one may question his phrase "*remains* disabled."  It is also fair to say that Dr. Shahid's February 2011 note is sketchy in its designation of the clinical facts that lead to his characterization of Leroy as "disabled."  These are areas in which Dr. Shadid could have been asked for amplification or clarification of a medical opinion that lay at the heart of the benefits proceeding.

The ALJ's duty at that point, the Second Circuit decisions hold, was to "seek additional information," an obvious source being the treating physician himself.  Dr. Shadid could have been asked what this treating physician meant by "disabled"; what specific medical condition or conditions caused him to conclude that Leroy was "disabled"; when in the course of the treatment Leroy became "disabled"; and the like.  In *Schaal,* the Second Circuit remanded the case to the SSA so this sort of inquiry could be made in respect of a treating physician's opinion with which the agency disagreed, and a further explanation given if the agency persisted in that judgment after further inquiry.  The Second Circuit made the same decision and issued a comparable order of remand in *Snell*.

In *McIntyre v. Astrue*, 809 F.Supp.2d 13 (D.Conn. 2010), Judge Underhill applied these principles to the conduct of the SSA Appeals Council.  In that disability benefits action, the claimant's treating physician, Dr. Delaney, gave an opinion in 2006 that the claimant could perform

---

[4] Dr. Shahid's continuing treatment of Leroy qualifies him as a "treating physician" in much the same way as Dr. Jobson acquired that status in *Schaal*.

sedentary work.  The ALJ accepted that opinion and denied benefits.  Claimant sought review by the Appeals Council.  In support of that appeal, claimant submitted to the Appeals council an MRI and a second opinion in 2007 by Dr. Delaney, which repudiated his prior opinion and opined that claimant was incapable of performing even sedentary work.  Neither document had been before the ALJ.  The Appeals Council "simply accepted the ALJ's determination," 809 F.Supp.2d at 18, and denied benefits.

Judge Underhill concluded that the Appeals Council had committed clear error.  He noted the provision in the Regulations that "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion," and held: "Even if the ALJ's decision and analysis regarding Delaney's first opinion were proper, the Commissioner failed to comply with the regulations because the Appeals Council failed to meet its burden of providing plaintiff with good reasons for the lack of weight attributed to the treating physician's second opinion."  809 F.Supp.2d at 19.  He remanded the case "to the ALJ for consideration of the new evidence," adding that: "Remand allows the ALJ an opportunity to consider and appropriately weigh Delaney's opinion *and to re-contact Delaney for clarification, if necessary*."  *Id.* at 23 (emphasis added).

*McIntyre* is procedurally distinguishable from the case at bar because the agency's failure occurred at the Appeals Council stage, rather than, as in this case, during proceedings before the Administrative Law Judge.  But that is a distinction without a difference.  Judge Underhill's application of the "good reasons" requirement to events first occurring during the Appeals Council stage, and his ruling that the Appeals Council bears the same burden of providing a disability plaintiff with good reasons for disregarding a treating physician's opinion as does an ALJ,

demonstrates the overarching importance courts in this Circuit attach to that requirement.

In her ruling recommending affirmance of the Commissioner's denial of benefits to Leroy, Judge Margolis puts forward an alternative basis for rejecting Leroy's invocation of the treating physician rule: "Additionally, for the reasons stated in Section IV.A. *supra*, substantial evidence supports the ALJ's RFC determination, and plaintiff points to no gaps in the administrative record requiring the ALJ to recontact Dr. Shahid."   RR, Doc. 24, at 23.  I take this to mean that since the ALJ's calculation of Leroy's RFC ("residual functional capacity") showed she was capable of "light work" as defined in the Regulations, she could not be characterized as "disabled" or deemed eligible for disability benefits.  That RFC determination, the RR concludes in effect, trumps the opinion of Dr. Shahid, the treating physician, that Leroy "remains disabled."

The problem with this *apologia* is that ALJ Crawford did not specifically identify Leroy's RFC (a *vocational* determination) as a reason for disagreeing with Dr. Shahid's *medical* opinion that Leroy "remains disabled."  The ALJ's decision, after reciting the accurate but incomplete proposition that "disability analysis is not solely a question of medical fact," dismisses Dr. Shahid"s medical opinion in "one generalized sentence" for its failure to use "appropriate vocational data."  The phrase I have quoted comes from *Mott v. Astrue*, No. 5:10-cv-165, 2011 WL 4748345 (D.Vt. Oct. 6, 2011), at *5, where the district court, remanding a denial of benefits to the SSA, said that "the ALJ's evaluation of Dr. Zsoldos's opinions consists of one generalized sentence.  Because this generalized sentence does not provide 'good reasons' for rejecting Dr. Zsoldos's opinion, it cannot be affirmed on review."

This reviewing Court cannot accept a rationale supplying "good reasons" if that rationale is fashioned by someone other than the ALJ.  "Nor can the court accept the Commissioner's invitation

to seek the record for evidence which may supply 'good reasons.'" *Mott*, 2011 WL 4748345, at *5

(citing  *Snell*).  In *Peralta v. Barnhart*, No. 04-cv-4557, 2005 WL 1527669 (E.D.N.Y. June 22,

2005), at *10, the district court said:

> More importantly, the Commissioner's explanation of the ALJ's
> rationale is not a substitute for the ALJ providing good reasons in his
> decision for the weight given to treating physician's opinions.  *See*
> *Snell*, 177 F.3d at 134 (refusing to accept Commissioner's *post hoc*
> explanation for weight given to treating physician) (citing *Burlington*
> *Truck Lines, Inc. v. United States*, 471 U.S. 156, 168 (1962)
> (reviewing court "may not accept appellate counsel's *post hoc*
> rationalizations for agency action.")).

The cases cited in this Part teach that an ALJ has a *non-delegable* duty to explain to a

plaintiff the "good reasons" why the ALJ is discounting a treating physician's opinion.  No one –

neither counsel, nor Commissioner, nor reviewing Court –  can  perform that function for the ALJ

if the ALJ has failed to do it.  In the case at bar, the ALJ's terse explanation for her disregard of Dr.

Shahid"s opinion that Leroy "remains disabled" is inadequate as a matter of law.

The case must be remanded in order to correct an error of law appearing on the face of the

record.  In making that direction, I follow the course charted by the Second Circuit in *Schaal* and

*Snell*, and other cases as well; *see, e.g., Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008).

### III

Plaintiff's brief in support  of her objections to the RR contains other specifications of

perceived error.  Plaintiff faults the Magistrate Judge for accepting the ALJ's calculation of Leroy's

RFC, and for failing (as did the ALJ) to recognize the asserted "effect of Ms. Leroy's obesity on her

knee problems."  Doc. 27-1 at 2.

For the reasons stated in Part I, these objections are not subject to this Court's *de novo*

evaluation.  Unlike the question posed by the treating physician rule, the RR's conclusions on these issues are not clearly erroneous.  The objections relating to them will be denied.

## IV

For the foregoing reasons, Plaintiff's Objections to the Recommended Ruling of the Magistrate Judge are GRANTED IN PART and DENIED IN PART.

The Objection asserting that the Administrative Law Judge failed to comply with the treating physician rule is GRANTED.  The case is remanded to the Social Security Administration, with instructions that the case be resubmitted to the Administrative Law Judge, who is required to consider (1) whether additional information should be obtained from Dr. Shahid and (2) whether the ALJ agrees or disagrees with Dr. Shahid's opinion concerning Plaintiff's disability.  If the ALJ disagrees with Dr. Shahid's opinion, the ALJ is to give a full, explicit and comprehensive statement of the reasons for that disagreement and for the ALJ's contrary conclusion.  *See Burgess v. Astrue*, 537 F.3d at 132.

In all other respects, the Plaintiff's Objections are OVERRULED AND DENIED.

Accordingly, Plaintiff's Motion [Doc. #19] is GRANTED to the extent it seeks a remand for a new hearing, and the Commissioner's Motion [Doc.#23] is DENIED.

The Report and Recommendation of the Magistrate Judge [Doc. #24] is ACCEPTED AS MODIFIED by this Ruling.

The Clerk is directed to close the file.  It is SO ORDERED.

Dated:   New Haven, Connecticut
             February 6, 2015

/s/ Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge